# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON  DIVISION

| | | |
|---|---|---|
| **BUCHANAN COUNTY, VIRGINIA**, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:05CV00066 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **STUART RAY BLANKENSHIP, ET AL.,** | ) | By:  James P. Jones |
| | ) | Chief United States District Judge |
| | ) | |
| Defendants. | ) | |

*Steven R. Minor, Elliott Lawson & Minor, Bristol, Virginia, for Plaintiff; Kenneth Morris Hale, Defendant Pro Se; A. Benton Chafin, Jr., Chafin Law Firm, P.C., Lebanon, Virginia, for Defendant David Mathias Thompson; Terry Gene Clevinger, Defendant Pro Se; Donald A. McGlothlin, Jr., Lebanon, Virginia, for Defendant Terry Allen Keene; Thomas R. Scott, Jr., Street Law Firm, LLP, Grundy, Virginia, for Defendants Rodney Blake Lee and Earl Jackson "Roho" Lester, Jr.; S.D. Roberts Moore, E. Scott Austin, and Kathleen L. Wright, Gentry Locke Rakes & Moore, Roanoke, Virginia, and John E. Jessie, Jessie, Read & Ely, P.C., Abingdon, Virginia, for Defendant Donald Ray Matney; Daniel W. Fast, Wise, Virginia, for Defendant Gary Moore; and Wayne T. Horn, Grundy, Virginia, for Defendant Kenneth Joseph Stephens.*

In this civil RICO action brought by a local government seeking damages from the participants in a bid rigging and bribery scheme, the plaintiff seeks partial summary judgment based on facts determined in the previous criminal prosecution of the defendants.  While I find that some of the facts are established, some are not, and I will thus grant the motion in part and deny it in part.

I

On May 2, 2002, Hurley, Virginia—a small community located a short distance from both Kentucky and West Virginia in Buchanan County—was devastated by a flash flood. The flood occurred after torrential rain caused the Knox Creek to swell its banks. As a result of the flash flood, some $30 million dollars in damages were caused to public and private property, dozens of homes and businesses were destroyed, and two people were killed.

In an attempt to assist the county with debris removal and reconstruction costs, the Commonwealth of Virginia and the Federal Emergency Management Agency ("FEMA") established a program to channel financial aid to the county. Although FEMA had outside contractors working in the county, after complaints from the chairman of the local board of supervisors, FEMA removed these contractors in June of 2002. The removal of the outside contractors by FEMA enabled certain county officials, contractors, and county employees to exploit the devastation wrought by the flood for their own gain. In the months that followed, bribes were paid by contractors to county officials, contractors colluded to rig bids, and contract prices were inflated by contractors to fund the bribes. During this period, the county awarded some $7.6 million in contracts, resulting in bribes and bid rigging. The majority of the bribes

were paid in cash, though some were paid in the form of coon dogs, clothing, and football and NASCAR tickets, among other things.

Following an investigation by federal authorities (which they termed "Operation Big Coon Dog") the feeding frenzy of corruption was uncovered. As a result, in June of 2004, sixteen individuals and six associated companies were indicted in this court for a range of federal crimes, including the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. §§ 1961-1968 (West 2000 & Supp. 2007). Of these defendants, all but one entered guilty pleas to various violations of federal law. All of the defendants were sentenced to prison.

The local governmental entity, Buchanan County, Virginia, then filed the present civil action, seeking monetary recovery from the defendants under RICO and pendent state law claims.[1] In response to an earlier Motion for Partial Summary Judgment, the court agreed that the doctrines of collateral or judicial estoppel might be applicable as a result of the criminal prosecutions, but denied the motion because

---

[1] In addition to suing fourteen of the sixteen individual defendants who were convicted in the criminal case, the plaintiff has also filed suit against certain of the business entities associated with these defendants. The plaintiff's present motion seeks partial summary judgment only against individual defendants and not against any of the entities. Of the fourteen individuals sued, the plaintiff has since voluntarily dismissed two of them and one defendant died shortly after the suit was instituted. Thus, the present motion involves eleven individual defendants. One of these defendants, Kenneth Wolford, has been declared in default in this case and one defendant, Stuart Ray Blankenship, has never entered an appearance. However, the plaintiff does not rely on these defaults in its present motion.

-3-

the plaintiff had failed to met its burden of establishing the particular facts precluded as to each defendant. The plaintiff has now filed a Second Motion for Partial Summary Judgment. A hearing on the motion was held on July 13, 2007, and it is ripe for decision.

II

The plaintiff alleges that each defendant engaged in the conduct of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C.A. § 1962(c) and that the defendants jointly conspired to participate in a pattern of racketeering activity in violation of 18 U.S.C.A. § 1962(d). In order to recover damages allegedly caused by the defendants' illegal conduct, the plaintiff brought this cause of action under the provision of RICO authorizing a civil remedy. 18 U.S.C.A. § 1964(c).

Civil RICO is a statutory tort remedy that allows a private party to recover for injuries caused by a violation of the RICO criminal provisions. However, a criminal prosecution is not a prerequisite to filing a civil RICO claim. *Chisolm v. TranSouth Fin. Corp.*, 95 F.3d 331, 336 (4th Cir. 1996).

Under RICO, racketeering activity is classified as an act that is indictable under a list of criminal offenses that include bribery, mail fraud, and wire fraud. 18

-4-

U.S.C.A. § 1961. A pattern is defined as two predicate acts of racketeering activity within ten years. *Id.*

To recover in a civil RICO case, the plaintiff must show that (1) the defendant violated § 1962; (2) it has suffered injury to its business or property; and (3) the defendant's violation of the RICO statute was the proximate cause of such injury. *See Brandenburg v. Seidel*, 859 F.2d 1179, 1186 (4th Cir. 1988), *overruled on other grounds by Quakenbush v. Allstate Ins. Co.*, 517 U.S. 706, 711 (1996). Causation principles applicable to tort liability are applicable in civil RICO cases. *Brandenbrug*, 859 F.2d at 1189. Accordingly, the plaintiff must demonstrate that its injury was a legal or proximate cause of the defendants' violation of the criminal RICO statute. See *Miller v. Asensio & Co.,* 364 F.3d 223, 232 n.6 (4th Cir. 2004). "[A] cause-in-fact connection, standing alone, does not suffice to establish liability." *Brandenburg*, 859 F.2d at 1189.

III

Central to the present motion is the plaintiff's attempt to apply the doctrines of collateral and judicial estoppel to preclude the defendants from controverting certain

-5-

facts that it argues have been established by the defendant's criminal convictions for the same underlying conduct at issue in this case.[2]

The application of collateral estoppel precludes the relitigation of any issues "actually litigated and necessary to the outcome of the first action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979). In order for an issue to be precluded, the party seeking to rely on the doctrine must establish that (1) the issue it seeks to preclude is identical to the one previously litigated; (2) the issue was in fact determined in the prior proceeding; (3) the issue was a necessary part of the decision reached in that proceeding; (4) the prior judgment is final and valid; and (5) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue. *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217-18 (4th Cir. 2006).

---

[2] Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000). In order for judicial estoppel to apply the following elements must be met: (1) the party sought to be estopped must attempt to adopt a position that is inconsistent with the stance taken in prior litigation; (2) the prior inconsistent position must have been accepted by the court; and (3) the party sought to intentionally mislead the court by its previous position. *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996).

The first issue is whether it is proper to apply the doctrine of collateral estoppel or judicial estoppel to the instant case.[3] Considering the principles outlined in *Parklane Hosiery*, I find that it is proper to apply collateral estoppel. First, the elements of a criminal RICO case are identical to those of a civil RICO case, although in a civil RICO action a plaintiff must additionally prove causation and injury. Second, no defendant has objected to the use of collateral estoppel in this case, though certain defendants do dispute which facts should be properly precluded.

Accordingly, any facts clearly established and essential to a defendant's conviction under the criminal RICO statute should be precluded from relitigation in a civil suit that is based on the same underlying conduct. *See Parklane Hosiery Co., 439 U.S. at 326.*

Nonetheless, the plaintiff bears the burden of establishing the facts it seeks to have precluded. *See Dowling v. United States*, 493 U.S. 342, 350 (1990). Issues

---

[3] The plaintiff's present motion attempts to concurrently apply the doctrines of collateral estoppel and judicial estoppel to deem all facts raised in the defendants' Rule 11 guilty plea hearings and admissions made by certain defendants at the Lester trial as precluded from litigation in future proceedings. Although the plaintiff's proposed order and Second Motion for Partial Summary Judgment contain certain facts that can be properly precluded through the operation of collateral estoppel, the plaintiff also seeks to preclude other facts that may not be properly precluded through the operation of collateral estoppel. However, in the absence of any showing why facts that cannot be established through the operation of collateral estoppel should be established through the operation of judicial estoppel, I will not address whether judicial estoppel is applicable in the instant case or the particular facts that may be deemed precluded based on its operation.

necessary and essential to a criminal conviction, whether secured by jury verdict or guilty plea, may be precluded in a subsequent civil proceeding. *See United States v. Podell*, 572 F.2d 31, 35 (2d Cir. 1978). Where a criminal conviction results from a plea agreement with the government, a defendant is precluded from retrying issues necessary to such an agreement. *United States v. Wight*, 839 F.2d 193, 196 (4th Cir. 1987).

Under Fourth Circuit precedent, the amount of bribes paid may not be precluded in a subsequent civil proceeding where the specific amount of such bribes was not mentioned in the plea agreement nor an element of the crime of which the defendant was convicted. *Id*. This is true even though the amount of such bribes was raised by the government in a Rule 11 guilty plea hearing and not objected to by the defendant. *West Virginia v. Moore*, 897 F. Supp. 276, 279 (S.D.W. Va. 1995) ("Applying the rationale set forth in *Wight* to this case . . . [a]ny facts set forth at the Rule 11 plea hearing which were not essential to [the defendant's] conviction have not been conclusively established.").

"[A] guilty plea is an admission of all the elements of a formal criminal charge . . . ." *McCarthy v. United States*, 394 U.S. 459, 466 (1969). A court may only accept a guilty plea if it is satisfied that there is sufficient evidence to show that the defendant is in fact guilty. *Santobello v. New York*, 404 U.S. 257, 261 (1971); Fed.

-8-

R. Crim. P. 11(b)(3).  The development of such a factual basis at a Rule 11 hearing is not necessarily indicative that a court has found every fact proffered by the government to be true beyond a reasonable doubt.  A court need only be satisfied that the government has the minimum amount of evidence to prove each element of the crime.  Accordingly, the mechanical operation of collateral estoppel to every fact proffered by the government to support a defendant's plea of guilty at a Rule 11 hearing is contrary to this circuit's precedent.  *See Wight*, 839 F.2d at 195-96.

In determining what facts and issues are precluded in a civil action that is based on an underlying criminal conviction, a court may look to the judgments of conviction, plea agreements, and facts presented by the government during a  Rule 11 hearing.  *See Anderson v. Janovich*, 543 F. Supp. 1124, 1134 (W.D. Wash. 1982).  The plaintiff has submitted the original indictment, superseding indictment, transcripts from the Rule 11 hearings where each defendant entered guilty pleas, and portions of the transcript from Lester's criminal trial.  After carefully reviewing these documents, I find that by applying the doctrine of collateral estoppel, certain facts have been conclusively established and may not be contested at any later proceeding in this case.  The facts that have been established through the application of collateral estoppel as to each individual defendant will be addressed in turn.

-9-

A.    STUART RAY BLANKENSHIP.

On August 14, 2004, Stuart Ray Blankenship pleaded guilty to conspiring to commit RICO activity in violation of 18 U.S.C.A. § 1962(d) and money laundering in violation of 18 U.S.C.A. § 1956(h) (West 2000 & Supp. 2007). Based on the facts and evidence underlying his plea of guilty to these charges, the following facts are deemed established for purposes of this case and may not be contested at trial.

> Blankenship was the supervisor of the Knox Creek District in Buchanan County and chairman of the board of supervisors at the time of the flooding and during the recovery period. From in or about 2001 until June of 2004, Blankenship was employed by or associated with an enterprise, Buchanan County, the activities of which affected interstate commerce, and he participated in the affairs of Buchanan County. During this period, Blankenship conspired to participate in the affairs of Buchanan County through a pattern of racketeering activity. As part of the conspiracy, Blankenship agreed to commit at least two acts of racketeering activity in the conduct of the affairs of Buchanan County.

> These acts of racketeering included his collusion with a select group of contractors to rig bids and shut out legitimate contractors from receiving clean-up contracts. These acts also included acceptance of bribes in exchange for awarding debris removal contracts to Joseph Stephens, Donald Matney, and Terry Clevinger and the acceptance of kickbacks on demolition projects performed by Terry Keene and Kenneth Wolford. Finally, these acts of racketeering included acceptance of bribes for bridge contracts that were awarded to Donald Matney and performed by Rodney Lee.

-10-

Accordingly, Blankenship is precluded from contesting his association with an enterprise, Buchanan County, and that he agreed that the enterprise would be conducted through a pattern of racketeering activity as described herein.

B.    TERRY ALLEN KEENE.

On August 14, 2004, Terry Allen Keene pleaded guilty to conspiring to commit RICO activity in violation of 18 U.S.C.A. § 1962(d) and conspiring to commit money laundering in violation of 18 U.S.C.A. § 1956(h). Based on the facts and evidence underlying his plea of guilty to these charges, the following facts are deemed established for purposes of this case and may not be contested at trial.

> From in or about 2001 until June of 2004, Keene was employed by or associated with an enterprise, Buchanan County, and participated in the affairs of Buchanan County, the activities of which affected interstate commerce. During this period, Keene conspired to participate in the affairs of Buchanan County through a pattern of racketeering activity. As part of the conspiracy, Keene agreed to commit at least two acts of racketeering activity in the conduct of the affairs of Buchanan County.
>
> These acts of racketeering included payment of bribes to Ray Blankenship in the form of kickbacks on demolition projects in or about January 2003. These acts of racketeering also included the payment of bribes in the form of cash, checks, and other items in or about January 2003 until in or about September 2003 in order to secure contracts from Blankenship.

-11-

Accordingly, Keene is precluded from contesting his association with an enterprise, Buchanan County, and that he agreed that the enterprise would be conducted through a pattern of racketeering activity as described herein.

C.    DONALD RAY MATNEY.

On August 14, 2004, Donald Ray Matney pleaded guilty to conspiring to commit RICO activity in violation of 18 U.S.C.A. § 1962(d) and conspiring to commit money laundering in violation of 18 U.S.C.A § 1956(h).  Based on the facts and evidence underlying his plea of guilty to these charges, the following facts are deemed established for purposes of this case and may not be contested at trial.

> From in or about 2001 until June of 2004, Matney was employed by or associated with an enterprise, Buchanan County, and participated in the affairs of Buchanan County, the activities of which affected interstate commerce.   During this period, Matney conspired to participate in the affairs of Buchanan County through a pattern of racketeering activity. As part of the conspiracy, Matney agreed to commit at least two acts of racketeering activity in the conduct of the affairs of Buchanan County.

> These acts of racketeering included payment of cash bribes to Ray Blankenship in or about May 2002 and spring 2003 in order to gain five bridge repair contracts.   These acts of racketeering also included Matney's payment of bribes to Blankenship in order to gain non-bid debris removal work.  Matney also paid bribes to Calvin Ward, a county supervisor, to receive contracts with the county and to secure contracts from Ward's private employer.

-12-

Accordingly, Matney is precluded from contesting his association with an enterprise, Buchanan County, and that he agreed that the enterprise would be conducted through a pattern of racketeering activity as described herein.

D.    KENNETH JOSEPH STEPHENS.

On September 2, 2004, Kenneth Joseph Stephens pleaded guilty to committing acts of racketeering activity in violation of 18 U.S.C.A. § 1962 (c) and conspiring to commit money laundering in violation of 18 U.S.C.A. § 1956(h).  Based on the facts and evidence underlying his plea of guilty to these charges, the following facts are deemed established for purposes of this case and may not be contested at trial.

> Stephens was a contractor involved in flood recovery work.  He was employed by or associated with an enterprise, Buchanan County, the activities of which affected interstate commerce.  He also participated in the affairs of Buchanan County through racketeering acts described in the indictment.

> These racketeering acts included the payment by Stephens of a cash bribe and a bribe in the form of debt forgiveness to Kenneth Hale in summer 2002.  On or about July 19, 2002, Stephens bribed Pete Stiltner in the form of a television set.  In or about late January or early February 2003, Stephens also bribed Stiltner in the form of cash.  On February 17, 2003, as a bribe, Stephens paid Stiltner a $50,000 check for a piece of land worth only approximately $20,000.  Finally, in March of 2003, Stephens gave Stiltner a bribe in the form of clothing.

> Additionally, in or about July 2002 until June 2004, Stephens colluded with Ray Blankenship, Kenneth Wolford, and Terry Keene to devise a scheme to avoid competitive bidding on house demolition projects in Hurley.

-13-

In February 2003, March 2003, and April 2003, Stephens paid David Thompson cash bribes; in January 2003 gave him a bribe in the form of clothing; and in March 2003 gave him a bribe in the form of clothing for both him and his wife.

From May 2002 until September 2003, Stephens paid Gary Moore bribes of NASCAR tickets, college football tickets, and professional basketball tickets. In October 2002, Stephens gave Moore a check as a bribe. In late December 2002 or early January 2003, Stephens gave a truck to Moore as a bribe. On January 20, 2003, Stephens paid Moore for a roofing installation job he had performed. However, the price of the job was greatly inflated to induce Moore not to report his knowledge of fraudulent activities to his employer.

Finally, in summer 2002, Stephens bribed Calvin Ward by giving him a pressure washer.

Accordingly, Stephens is precluded from contesting that he participated in the affairs of Buchanan County through the multiple racketeering acts described herein.

E.    TERRY GENE CLEVINGER.

On October 8, 2004, Terry Gene Clevinger pleaded guilty to committing acts of racketeering activity in violation of 18 U.S.C.A. § 1962(c), program fraud in violation of 18 U.S.C.A. § 666(a)(2) (West 2000), and conspiring to commit money laundering in violation of 18 U.S.C.A. § 1956(h). Based on the facts and evidence underlying his plea of guilty to these charges, the following facts are deemed established for purposes of this case and may not be contested at trial.

Clevinger received multiple contracts related to the Hurley flood. He was employed by or associated with an enterprise, Buchanan County,

-14-

the activities of which affected interstate commerce. He also participated in the affairs of Buchanan County through racketeering acts described in the indictment.

These racketeering acts included payment of multiple bribes to Buchanan County officials to influence the awarding of contracts. From January 7, 2003, to July 29, 2003, Clevinger paid Kenneth Hale multiple cash bribes. From in or about spring 2002 to in or about July 2003, Clevinger paid multiple cash bribes to Ray Blankenship and gave Blankenship two coon dogs as a bribe. In September 2002, he gave Blankenship a bribe of an all terrain vehicle.

Accordingly, Clevinger is precluded from contesting that he participated in the affairs of Buchanan County through the multiple racketeering acts described herein.

F.     KENNETH WOLFORD.

On November 11, 2004, Kenneth Wolford pleaded guilty to committing acts of racketeering activity in violation of 18 U.S.C.A. § 1962(c), conspiring to commit wire fraud in violation of 18 U.S.C.A. § 371 (West 2000), and conspiring to commit money laundering in violation of 18 U.S.C.A. § 1956(h). Based on the facts and evidence underlying his plea of guilty to these charges, the following facts are deemed established for purposes of this case and may not be contested at trial.

Wolford was employed by or associated with an enterprise, Buchanan County, the activities of which affected interstate commerce. He also participated in the affairs of Buchanan County through racketeering acts described in the indictment.

These racketeering acts included payment of multiple bribes to Buchanan County officials and bid rigging. From about July 2002 until

-15-

June 2004, Wolford colluded with Ray Blankenship, Joseph Stephens, and Terry Keene to devise a scheme to avoid competitive bidding on house demolition projects in Hurley. In or about January 2003, Wolford paid Blankenship a kickback related to his awarding of a demolition contract. In or about August 2002 until June 2004, Wolford colluded with Blankenship and Keene to devise a scheme to avoid competitive bidding on house demolition projects. In January 2003, Wolford bribed Blankenship to obtain a demolition contract. On or about February 4, 2004, Wolford attempted to corruptly persuade Terry Keene from reporting possible commissions of a federal offense to authorities.

Accordingly, Wolford is precluded from contesting that he participated in the affairs of Buchanan County through the multiple racketeering acts described herein.

G.     GARY MOORE.

On November 11, 2004, Gary Moore pleaded guilty to committing acts of racketeering activity in violation of 18 U.S.C.A. § 1962(c), bribery of a public official in violation of 18 U.S.C.A. § 201(b)(2)(B) (West 2000), and conspiring to commit money laundering in violation of 18 U.S.C.A. § 1956(h). Based on the facts and evidence underlying his plea of guilty to these charges, the following facts are deemed established for purposes of this case and may not be contested at trial.

Moore was a public official and as such was employed by or associated with an enterprise, Buchanan County, the activities of which affected interstate commerce. He also participated in the affairs of Buchanan County through racketeering acts described in the indictment. These racketeering activities included soliciting and accepting bribes in order to keep fraudulent activities he was aware of from his employer.

-16-

From in or about May 2002 until in or about summer 2003, Moore accepted bribes of NASCAR tickets, college football tickets, professional basketball tickets, and other items of value from Joseph Stephens.

In or about October 2002, Moore received a check from Joseph Stephens as a bribe. In or about December 2002, Moore accepted a truck from Stephens as a bribe. In or about January 2003, Moore accepted an inflated amount of money as a bribe from Stephens to install a roof on his business. In or about July 2002, Moore accepted a bribe from Ray Blankenship and Terry Clevinger. On or about September 3, 2003, Moore attempted to prevent Stephens from alerting authorities to the possible commission of certain federal offenses.

Accordingly, Moore is precluded from contesting that he participated in the affairs of Buchanan County through the multiple racketeering acts described herein.

H.    RODNEY BLAKE LEE.

On November 17, 2004, Rodney Blake Lee pleaded guilty to committing acts of racketeering activity in violation of 18 U.S.C.A. § 1962(c), program fraud in violation of 18 U.S.C.A. § 666(a)(2), and conspiring to commit money laundering in violation of 18 U.S.C.A. § 1956(h). Based on the facts and evidence underlying his plea of guilty to these charges, the following facts are deemed established for the purposes of this case and may not be contested at trial.

Lee was a contractor involved in flood recovery work. He was employed by or associated with an enterprise, Buchanan County, the activities of which affected interstate commerce. He also participated in the affairs of Buchanan County through five racketeering acts described in the indictment.

-17-

In particular, on or about May 2002 and in the spring of 2003, Lee partnered with Donald Matney to funnel cash bribes to Ray Blankenship in order to receive bridge contracts. Lee paid five bribes on five separate occasions to Blankenship.

Accordingly, Lee is precluded from contesting that he participated in the affairs of Buchanan County through the multiple racketeering acts described herein.

I.  DAVID MATHIAS THOMPSON.

On December 3, 2004, David Mathias Thompson pleaded guilty to committing acts of racketeering activity in violation of 18 U.S.C.A. § 1962(c), program fraud in violation 18 U.S.C.A. § 666(a)(1)(B) (West 2000), and conspiring to commit money laundering in violation of 18 U.S.C.A. § 1956(h). Based on the facts and evidence underlying his plea of guilty to these charges, the following facts are deemed established for purposes of this case and may not be contested at trial.

Thompson was the emergency services coordinator and a mapping technician for Buchanan County. As such, he was employed or associated with an enterprise, Buchanan County, the activities of which affected interstate commerce. He also participated in the affairs of Buchanan County through racketeering acts described in the indictment.

These racketeering activities included the acceptance of bribes by Thompson from a contractor so that he would give that contractor favorable treatment in the awarding of work for the county. In or about January 2003, Thompson accepted a bribe of clothing from Joseph Stephens. In or about February 2003, Thompson accepted a cash bribe from Stephens. In or about March 2003, Thompson accepted a cash bribe and clothing for his wife as a bribe. In or about April 2003, Thompson accepted a bribe from Stephens.

-18-

Accordingly, Thompson is precluded from contesting that he participated in the affairs of Buchanan County through the multiple racketeering acts described herein.

J.     KENNETH MORRIS HALE.

On December 14, 2004, Kenneth Morris Hale pleaded guilty to committing acts of racketeering activity in violation of 18 U.S.C.A. § 1962(c), program fraud in violation of 18 U.S.C.A. § 666(a)(1)(B), conspiring to commit money laundering in violation of 18 U.S.C.A. § 1956(h).  Based on the facts and evidence underlying his plea of guilty to these charges, the following facts are deemed established for purposes of this case and may not be contested at trial.

> Hale was the coal road engineer for Buchanan County.  As such, he was employed by or associated with an enterprise, Buchanan County, the activities of which affected interstate commerce.  He also willfully participated in the affairs of Buchanan County through racketeering acts described in the indictment.  The racketeering activities included the acceptance of bribes by Hale in exchange for awarding county contracts for bridge construction and repair.
>
> Hale accepted cash bribes from Terry Clevinger on or about March 19, 2002; March 21, 2002; April 12, 2002; April 18, 2002; April 24, 2002; May 3, 2002; May 6, 2002; May 9, 2002; May 17, 2002; June 6, 2002; June 22, 2002; July 11, 2002; August 18, 2002; August 30, 2002; September 13, 2002; September 30, 2002; October 18, 2002; October 29, 2002; November 1, 2002; November 16, 2002; November 21, 2002; January 7, 2003; January 10, 2003; February 7, 2003; and February 14, 2003.

-19-

Hale accepted cash bribes and bribes of debt forgiveness from Joseph Stephens in summer 2002. In or about May and June 2003, Hale assisted Stephens in bribing Ray Blankenship by obtaining a truck motor as a bribe. In or about fall 2003, Hale attempted to threaten or intimidate Clevinger in order to prevent him from reporting violations of federal law to authorities.

Accordingly, Hale is precluded from contesting that he participated in the affairs of Buchanan County through the multiple racketeering acts described herein.

K.     EARL JACKSON "ROHO" LESTER, JR.

In addition to the defendants who pleaded guilty to acts of racketeering activity stemming from corruption related to the Hurley flood clean-up, one defendant persisted in a plea of not guilty. On April 11, 2005, Earl Jackson "Roho" Lester, Jr., was tried on charges of conspiring to commit wire fraud in violation of 18 U.S.C.A. § 371 and money laundering in violation of 18 U.S.C.A. § 1956(h). Based on the evidence adduced at trial, the following facts are deemed established for purposes of this case and may not be contested at trial.

Although Lester was not accused of paying bribes, he did help rig bids on federally financed flood cleanup contracts. Lester was one of four contractors that colluded with Ray Blankenship to undermine competitive bidding on certain contracts. As such, he was employed or associated with an enterprise, Buchanan County, the activities of which affected interstate commerce. Lester played an integral role in a bid rigging scheme. His company, LEET Construction Co., would enter the high bid for a project after colluding with the other contractors on the amounts each should bid. In exchange for his role, he was to be hired

-20-

as a subcontractor for the contractor who was ultimately awarded the bid.

Accordingly, Lester is precluded from contesting his participation in the activities as described herein.


IV

The next issue raised by the present motion is the extent to which preclusion of the aforementioned facts entitles the plaintiff to summary judgment on Counts One and Two of its Amended Complaint. Summary judgment is appropriate when there is "no genuine issue of material fact," given the parties' burdens of proof at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *see* Fed. R. Civ. P. 56(c). All reasonable inferences are "viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

Collateral estoppel "may compel a grant of summary judgment as to the factual issues resolved by [an] earlier judgment." *County of Cook v. Lynch*, 560 F. Supp. 136, 140 ( N.D. Ill. 1982). The plaintiff seeks summary judgment on the two counts it has filed under the civil RICO statute. Count One seeks to hold each individual defendant liable for their own racketeering activities to the extent each one violated

-21-

§ 1962(c).  Count Two seeks to hold all the defendants liable for participating in a conspiracy to commit a pattern of racketeering activity in violation of § 1962(d).[4]  To prove a violation of § 1962(c), a plaintiff need only show an "association in fact in an enterprise whose affairs are conducted through a pattern of racketeering activity." *United States v. Griffin*, 660 F.2d 996, 999-1000. (4th Cir. 1981).  However, to prove a violation of § 1962(d) the traditional requirements of a "single agreement" or "common objective" essential to proving a conspiracy must be established.  *Id.*

As to Counts One and Two, the plaintiff cannot recover against a defendant unless it proves such defendant violated the RICO statute and that it has suffered an injury to its business or property by reason of such a violation.  *See Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479. 496 (1985).  Although facts related to whether certain defendants conspired to or actually participated in racketeering acts were decided in the preceding criminal cases, the issues of causation and injury to the plaintiff's business or property was not decided.

---

[4]   Under the civil RICO statute, where liability is based on a violation of the criminal RICO statute, the plaintiff must prove that a defendant's underlying conduct  was a violation of the particular RICO section that is alleged.  Therefore, in order to recover under Count One, the plaintiff must prove all the elements of a RICO violation under § 1962(c), and to recover under Count Two, the plaintiff prove all the elements of a RICO violation under § 1962(d).

The plaintiff argues that due to the operation of collateral estoppel, liability has been conclusively established and that the only issue left for trial is a computation of damages. The plaintiff misconceives the standard for establishing liability under the civil RICO statute. Liability is not established by simply showing that a defendant participated in an enterprise through a pattern of racketeering activity. Although the issue of damages is linked to proof of injury, the plaintiff conflates the two. Injury, causation, and actual damages are distinct issues. In this case, neither injury nor causation can be presumed. Proximate cause is an issue that must be presented to the jury, unless the undisputed facts lead to only one reasonable inference. *See Lockwood v. Bowman Constr. Co.*, 101 F.3d 1231, 1235 (7th Cir. 1996). The plaintiff has not presented sufficient evidence of injury and causation to allow the court to enter a finding on these issues.

Accordingly, this court's finding that the defendants are precluded from contesting certain facts related to their participation or conspiracy to participate in acts of racketeering for which they were convicted is not conclusive as to liability. Injury and causation must still be established.

A.    COUNT ONE.

The guilty pleas of Joseph Stephens, Terry Clevinger, Kenneth Wolford, Rodney Lee, Gary Moore, David Thompson, and Kenneth Hale and the conviction

-23-

of Earl Lester are sufficient to prove that each defendant either solicited, paid, or accepted bribes and kickbacks related to the awarding of contracts and jobs through Buchanan County or assisted in such acts. These facts establish that each of these defendants engaged in conduct of an enterprise through a pattern of racketeering activity in violation of § 1962(c). Accordingly, the plaintiff need not offer proof on these elements at trial.

Though these facts alone are sufficient to sustain the conviction of each of these defendants and to meet certain elements under a civil RICO claim, the plaintiff must still prove that the acts of each defendant—to the extent such acts constitute a violation of § 1962(c)—were the proximate cause of injury to its business or property.

Accordingly, as to Count One, the plaintiff's motion will be granted as to preclude Joseph Stephens, Terry Clevinger, Kenneth Wolford, Rodney Lee, Gary Moore, David Thompson, Kenneth Hale, and Earl Lester from relitigating that they each engaged in conduct of an enterprise through a pattern of racketeering activity and violated § 1962(c) in so doing.

Furthermore, the facts that have been deemed established through the guilty pleas of Ray Blankenship, Terry Keene, and Donald Matney to § 1962(d)—conspiracy to commit a RICO activity—are sufficient to prove that they each committed at least two predicate acts of racketeering by soliciting, paying or

accepting bribes and kickbacks related to the awarding of contracts and jobs through Buchanan County. These facts establish that each of these defendants violated § 1962(c), though none were convicted of this crime, by engaging in conduct of an enterprise through a pattern of racketeering activity. As to Count One, the plaintiff need not offer proof that Ray Blankenship, Terry Keene, and Donald Matney violated the RICO statute because the facts deemed precluded in Part III of this opinion establish this violation. Accordingly, the plaintiff's motion will be granted so as to preclude Ray Blankenship, Terry Keene, and Donald Matney from relitigating that they each engaged in conduct of an enterprise through a pattern of racketeering activity.

B.    COUNT TWO.

In Count Two of the Amended Complaint, the plaintiff alleges that all the defendants were part of a single conspiracy in which they agreed to commit a pattern of racketeering activities.[5] The guilty pleas of Ray Blankenship, Terry Keene, and

---

[5] Assuming the plaintiff is able to prove each defendant is liable for conspiracy to commit a pattern of racketeering activity in violation of § 1962(d), such a finding does not necessarily mean that each defendant is jointly liable for the all injuries caused by the acts of every other defendant found to be part of conspiracy. Under principles of civil conspiracy, a conspirator is only liable for the foreseeable acts of co-conspirators performed in furtherance of a conspiracy. *See Williams v. Fedor*, 69 F. Supp. 2d 649, 666 (E.D. Pa. 1999). "Conspirators are chargeable with the acts of their fellows only if the acts are done in the furtherance of the joint venture as all understood it; they are not to be held for what some of the conspirators, unknown to the rest, do beyond the reasonable intendment of the common understanding." *Taxin v. Food Fair Stores, Inc.*, 287 F.2d 448, 451 (3d Cir. 1961).

Donald Matney to violating § 1962(d) establish facts sufficient to prove that (1) each conspired to violate § 1962(c); (2) each understood the nature and unlawful character of the conspiratorial plan; (3) each agreed to join with others to achieve the objective of the conspiracy, and was aware of the existence and purpose of the enterprise; and (4) each agreed that the enterprise would be conducted through a pattern of racketeering activity, or agreed to commit, or to aid someone else in the commission of at least two predicate acts necessary to demonstrate a pattern of racketeering activity.

Accordingly, as to Count Two, the plaintiff's motion will be granted only so far as to preclude Ray Blankenship, Terry Keene, and Donald Matney from litigating their role in a conspiracy to violate § 1962(c). However, the plaintiff must establish that each of these defendant's violation of the RICO statute was the proximate cause of an injury to its business or property.

As to Joseph Stephens, Terry Clevinger, Kenneth Wolford, Rodney Lee, Gary Moore, David Thompson, Kenneth Hale, and Earl Lester, taken in isolation, the facts essential to the conviction of each are insufficient to hold each of them liable under § 1964(c) for a violation of § 1962(d). Though these facts may establish that each of these defendants participated in a pattern of racketeering activity, they are not

-26-

conclusive as to whether these particular defendants were involved in a single conspiracy as required by § 1962(d).

To hold a defendant liable for such a violation of the RICO statute, the plaintiff must show that they "by either words or action, objectively manifested an agreement to participate directly or indirectly in the affairs of the enterprise through the commission of at least two predicate acts of racketeering activity." *United States v. Tillett*, 763 F. 2d 628, 632 (4th Cir. 1985). It need not be shown "that each conspirator had knowledge of all of the details of the conspiracy but, rather, only that the defendant participated in the conspiracy with knowledge of the essential nature of the plan." *Id.*

Considering these perquisites for proving a violation of § 1962(d), the facts established by the criminal convictions of these defendants, without more, do not manifest that they were part of a single conspiracy and participated in such a conspiracy with knowledge of the nature of the plan. Accordingly, in respect to Count Two, the plaintiff's motion for summary judgment will be denied as to Joseph Stephens, Terry Clevinger, Kenneth Wolford, Rodney Lee, Gary Moore, David Thompson, Kenneth Hale, and Earl Lester. However, the facts deemed established by their guilty pleas through the operation of collateral estoppel, as described herein, may be used to prove the existence of such a conspiracy and their participation in it.

-27-

V

For the reasons stated herein, it is **ORDERED** that the plaintiff's Motion for

Partial Summary Judgment is GRANTED in part and DENIED in part. It will be

GRANTED to the extent that it precludes the defendants from relitigating the facts

conclusively established by their criminal convictions as set forth in this Opinion.

The motion is DENIED insofar as it seeks to preclude the defendants from contesting

any other facts or elements of the plaintiff's claims.

ENTER: August 3, 2007

/s/ JAMES P. JONES
Chief United States District Judge